IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MCKESSON MEDICAL-SURGICAL INC.,  )
a Virginia corporation  )
  )
     Plaintiff,  )
  )
v.  )   Case No.:  __3:19cv868_____
  )
WELLBOX INC., a Delaware corporation,  )
  )
     Defendant.  )
  )
  )

## COMPLAINT

Plaintiff McKesson Medical-Surgical Inc. ("McKesson") files this Complaint against Defendant Wellbox Inc. ("Wellbox"), and states as follows:

## THE PARTIES

1.    Plaintiff McKesson is a Virginia corporation with its principal place of business located at 9954 Mayland Drive, Richmond, Virginia, 23233 and who is, and at all relevant times was, domiciled in, and a citizen of, the Commonwealth of Virginia.

2.    Defendant Wellbox is not, and at all relevant times was not, domiciled in or a citizen of the Commonwealth of Virginia.  Wellbox is, and at all relevant times was, a Delaware corporation with its principal place of business located at 4401 Salisbury Road, Jacksonville, Florida 32216.  Upon information and belief, McKesson alleges that Wellbox regularly conducts and transacts business within the United States, including within the Commonwealth of Virginia.

## JURISDICTION AND VENUE

3.    Jurisdiction is based on 28 U.S.C. § 1332, in that this is a civil action between citizens of different states, and in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    This Court has personal jurisdiction over Wellbox because Wellbox established minimum contacts with the forum as set forth in this Complaint such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice and Wellbox has committed intentional acts, including, but not limited to, breach of contract in this Judicial District.

5.    For example, Wellbox entered into a Promotion Agreement with McKesson with a choice of law provision that specifically provides that any action on a claim arising out of, or in connection with the Promotion Agreement would be "governed by and construed in accordance with the laws of the Commonwealth of Virginia."

6.    In addition, Wellbox has derived substantial benefit from its intentional acts and is subject to personal jurisdiction in this Judicial District for at least the reasons identified in this Complaint.

7.    Further, this Court has personal jurisdiction pursuant to due process and/or the Commonwealth of Virginia Long Arm Statute, specifically under Va. Code Ann. § 8.01-328.1 because Wellbox purposefully availed itself of the benefits of conducting business in the Commonwealth of Virginia by, among other things:  (i) negotiating the contract discussed in this Complaint with McKesson within this Judicial District; (ii) finalizing and delivering the contract discussed in this Complaint to McKesson within this Judicial District; (iii) contracting for performance to occur in this Judicial District; (iv) causing injury in this Judicial District; and (v) Regularly doing or soliciting business, engaging in the persistent courses of conduct, and/or deriving substantial benefits from McKesson who is domiciled in this District.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), which provides for venue in federal court, because "a substantial part of the events or omissions giving rise to the claim occurred" in the Commonwealth of Virginia, including without limitation: (i) McKesson suffered the harm caused by Wellbox's breach of contract in this District, where McKesson resides and maintains its principal place or business; (ii) the contract at issue in this matter was finalized within this District; and (iii) the contract at issue in this action, provides a choice-of-law provision

selecting the Commonwealth of Virginia as the governing law which provided Wellbox with notice of possible litigation in the Commonwealth of Virginia.

9.     Additionally, venue is proper for the reasons described in Paragraph 7 of this Complaint.

FACTUAL BACKGROUND

10.     Plaintiff McKesson is a medical distributor offering medical-surgical products and equipment, healthcare solutions, distribution services and clinical resources to its customers. McKesson's customers include medical practices, community health centers, surgery centers, and urgent care centers.

11.     Defendant Wellbox was founded in 2015 to assist healthcare providers in providing Chronic Care Management ("CCM") services for their Medicare patients who are living with multiple chronic conditions such as asthma, diabetes, heart disease and hypertension.  Wellbox works with healthcare providers to identify CCM-eligible patients.

12.     Upon information and belief, McKesson alleges that if a patient decides to participate in CCM through Wellbox, Wellbox assigns the patient a chronic care coordinator who is responsible for scheduling, monitoring and delivering monthly care services and following-up with the patient to ensure that care plans are being followed successfully.  Wellbox is also responsible for updating the patient's health records so that the patient's primary healthcare provider can understand the full content of the patient's interactions with Wellbox.

13.     Wellbox also provides annual wellness visit services to individuals (the Wellbox CCM services and annual wellness visit services are hereinafter referred to collectively as the "Services").

14.     Upon information and belief, McKesson alleges that Wellbox provides its Services to Medicare patients on a nationwide basis.  As part of providing the Services, Wellbox obtains information from healthcare providers in Virginia about CCM-eligible individuals residing in Virginia and provides Services to those individuals in Virginia.

15.     In late 2016, Wellbox and McKesson began discussing a possible arrangement wherein McKesson would promote Wellbox's Services to McKesson's customers that are physician offices and clinics ("Customers").

16.     On or about January 1, 2017, McKesson and Wellbox entered into a Promotion Agreement wherein McKesson was appointed to promote Wellbox's Services to McKesson's Customers and Wellbox agreed to pay McKesson quarterly marketing fees for those services. The Promotion Agreement was negotiated with Wellbox through McKesson's Virginia based marketing team. The Promotion Agreement was signed by McKesson in Virginia and Wellbox returned the signed Promotion Agreement to McKesson in Virginia. The Promotion Agreement provided that all notices to McKesson must be sent to McKesson's Virginia headquarters and that Virginia law would govern any dispute.

17.     Wellbox agreed to perform, and did perform, duties in Virginia. Wellbox was required to provide the Services to interested Customers, including Customers in Virginia, which it did. Wellbox was also required to provide McKesson with periodic updates, which it sent to McKesson's marketing team in Virginia. Wellbox also participated in providing training to sales representatives at McKesson, including to sales representatives responsible for Customers located in Virginia.

18.     McKesson performed a substantial part of its obligations under the Promotion Agreement in Virginia for Wellbox's benefit. McKesson's marketing team in Virginia developed marketing materials to promote Wellbox's Services. McKesson published information about Wellbox on its website including brochures and webinars. McKesson also ran banner advertisements and posted Wellbox's logo on McKesson's technology page. The uploading of content promoting Wellbox to McKesson's website and technology page was performed by McKesson's marketing team located in Virginia.

19.     McKesson sales representatives identified interested Customers located in Virginia and relayed the interest of those Virginia based Customers to Wellbox. As a result of McKesson's marketing efforts, numerous Customers entered into agreements with Wellbox, including

Customers located in Virginia. Upon information and belief, McKesson alleges that individual patients of Customers located in Virginia also agreed to enroll in Wellbox's Services.

20. Pursuant to the terms of the Promotion Agreement, Wellbox was required to pay marketing fees to McKesson on a quarterly basis beginning with the first payment due on March 31, 2017. Future quarterly marketing fees were due within fifteen days from the start of each applicable quarter. While Wellbox did not meet the March 31, 2017 payment deadline, it did make the first payment to McKesson by May 2017.

21. McKesson continued to perform under the Promotion Agreement and Wellbox incurred quarterly marketing fees for the remainder of 2017. While Wellbox was also slow to pay these additional quarterly marketing fees it continued to assure McKesson that it wished to continue with the Promotion Agreement and that payment would be forthcoming. Moreover, in October, November and December of 2017, Wellbox paid McKesson other fees due under the Promotion Agreement.

22. In or around February 2018, Wellbox paid McKesson the outstanding quarterly marketing fees incurred from April 1, 2017 to December 31, 2017. Throughout this time, Wellbox continued to communicate to McKesson's its desire to have McKesson promote its Services to McKesson's Customers.

23. Accordingly, McKesson continued to market Wellbox's Services to its Customers during 2018. Wellbox again fell behind on making the quarterly marketing fee payments. However, when contacted by McKesson to discuss the outstanding amounts, Wellbox repeatedly assured McKesson that it wished to continue having McKesson promote Wellbox's Services per the terms of the Promotion Agreement and that payment of the quarterly marketing fees would be forthcoming. Moreover, Wellbox did make payments to McKesson in November 2018 and January, February and March of 2019 for other payments due to McKesson under the Promotion Agreement.

24. McKesson became increasingly concerned when by early 2019 Wellbox had still not paid any of the quarterly marketing fees incurred during the prior year. While McKesson

continued to receive assurances from Wellbox that payment would be forthcoming by mid-2019 McKesson still had not received any payment for the past due quarterly marketing fees. McKesson's accounting team in Richmond, Virginia performed an account reconciliation to confirm the amount Wellbox owed to McKesson.

25. By June 2019, there was due and owing and unpaid from Wellbox to McKesson the sum of $1,860,000.00 in quarterly marketing fees pursuant to the terms of the Promotion Agreement.

26. On or about July 10, 2019, McKesson sent a letter to Wellbox demanding payment for the past due quarterly marketing fees and notifying Wellbox that McKesson was terminating its promotional and marketing efforts on behalf of Wellbox.

<u>COUNT ONE</u>
(Breach of Contract)

27. Plaintiff incorporates by reference all allegations contained in Paragraphs 1 through 26, inclusive, of the Complaint as if those allegations were set forth herein.

28. On or about January 1, 2017, McKesson and Wellbox entered into the Promotion Agreement wherein Wellbox agreed to pay McKesson quarterly marketing fees for those services.

29. From January 2017 to June 2019, McKesson performed services for Wellbox under the Promotion Agreement for which Wellbox received the benefit.

30. Wellbox failed to pay the quarterly marketing fees for January 2018 to June 2019 when due and is in breach of the terms of the Promotion Agreement.

31. McKesson has performed all the promises, covenants and conditions it agreed to perform in accordance with the terms of the Promotion Agreement, except for those promises, covenants and conditions excused by the acts or omissions of Wellbox.

32. McKesson made demand upon Wellbox for payment of the sums due and owing under the terms of the Promotion Agreement; however, Wellbox failed and refused, and continues to fail and refuse, to pay the sums due and owing to McKesson.

33.     Under the Promotion Agreement, Wellbox is in default of its obligations to McKesson.

34.     As a result of Wellbox's breach of the Promotion Agreement, McKesson has been damaged in the sum of $1,860,000.00, together with accrued unpaid interest, accruing interest and other charges, plus attorneys' fees and costs of suit in amount not yet determined, according to proof at time of trial or entry of judgment.

35.     The Promotion Agreement provides that Wellbox shall indemnify McKesson for all costs, including all reasonable attorneys' fees and expenses due to Wellbox's breach of any obligation in the Promotion Agreement.  Due to the default of Wellbox on its payment obligations under the Promotion Agreement, McKesson has been obliged to retain the law firms of Spencer Shuford LLP and Buchalter, A Professional Corporation, for the purpose of instituting and prosecuting this action to enforce its rights.  McKesson is therefore entitled to recover its costs, including reasonable attorneys' fees and expenses, of enforcement and collection, according to proof at time of trial or entry of judgment.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff McKesson respectfully requests that this Court enter judgment against Defendant Wellbox as follows:

1.     For damages in the sum of $1,860,000.00, or according to proof;

2.     For interest, fees and charges, and reasonable attorneys' fees in an amount as allowed by law, according to proof;

3.     For costs of suit incurred herein; and

4.     For such other and further legal and equitable relief as the Court may deem just and proper.

DATED:  November 22, 2019

                    RESPECTFULLY SUBMITTED,

McKESSON MEDICAL-SURGICAL, INC.

By Counsel

By: _____/s/_____
Christopher C. Spencer (VSB No. 21878)
Direct Dial: (804) 285-5220
cspencer@spencershuford.com
Mark C. Shuford (VSB No. 31075)
Direct Dial: (804) 285-5227
mshuford@spencershuford.com
SPENCER SHUFORD LLP
6800 Paragon Place, Suite 420
Richmond, VA 23230
Telephone: (804) 285-5200
Facsimile: (804) 285-5210
*Counsel for McKesson Medical-Surgical, Inc.*

*And*

Jeffrey K. Garfinkle (Cal. Bar No. 153496)*
Direct Dial: (949) 224-6254
jgarfinkle@buchalter.com
Joanne N. Davies (Cal. Bar No. 204100)*
Direct Dial: (949) 224-6221
jdavies@buchalter.com
BUCHALTER, A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
*Counsel for McKesson Medical-Surgical, Inc.*

*\*Pro hac vice admission pending*